## STATE v. DAVIS.

1. CRIMINAL LAW—MALICE—CHARGE.—Upon trial of a murder case, it is not error to instruct the jury as to implied malice, even though all the facts attendant upon the homicide are brought out.

2. IBID.—MANSLAUGHTER.—The sudden heat and passion which re-

duces a homicide from murder to manslaughter, while it need not dethrone reason or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection.

3. IBID.—IBID.—The rule in this State is that where death is caused by use of a deadly weapon, provocation by *words only* is not sufficient to reduce the killing to manslaughter.

4. CHARGE—SELF-DEFENSE.—The charge, considered as a whole, as applicable to the law of self-defense, is not objectionable.

5. CHARGE—REQUESTS.—A verbal request to charge a legal proposition read from a statute or decision is not a compliance with Rule XI. of Circuit Court, requiring requests to charge to be submitted in writing.

6. CRIMINAL LAW—CHARGE—ARREST.—A private person has no right to arrest for simple petit larceny without a warrant, but may so arrest for felony, and the charge in this case was faulty in this respect, because it did not draw this distinction.

7. IBID.—IBID.—It is error to instruct the jury that a party has a right to repossess himself of property taken from him, without the explanation that such right must be exercised without a breach of the peace.

Before WATTS, J., Fairfield, September, 1896. Reversed.

Indictment against Henry Davis, for murder of James E. Suber. At the beginning of the argument for the defense, the counsel for defendant read sections 1 and 2 of Criminal Code, and requested the Court to charge the law as there laid down in regard to the right, power, and authority of private citizens to arrest without a warrant. The Judge instructed the jury as follows:

The defendant, Henry Davis, here, is charged by the State of South Carolina with murder, the highest offense known to our law—that is, the State of South Carolina charges that the defendant here killed and murdered one Mr. J. E. Suber. It is for you to inquire now whether or not, under the testimony developed in this case, the defendant here did kill and murder the deceased, Suber. Your first inquiry will be whether or not Mr. Suber came to his death by any instrumentality of the defendant here. If you conclude that the defendant did kill Suber, then your next inquiry will be whether the defendant be guilty of murder or manslaughter, or not guilty of the offense as charged.

You have heard the testimony in the case, and with that I have nothing to do. You are the sole judges of the facts.

Now, murder is the killing of any human being with malice aforethought, expressed or implied. There can be no murder without malice—either express or implied malice. By express malice, we mean where the deed is done with a calm, sedate and deliberate mind, and formed design, attended by external circumstances going to show that intention, such as lying in wait, old grudges, or old quarrels, or antecedent threats, or lying in ambush and shooting a man. All that the law calls express malice. Now, there can be no murder, as I said before, without malice aforethought, either express or implied. It is not necessary that that malice shall exist in the heart of the party committing the deed for any length of time previous to it, but it has got to be there when the deed is done. When the life of a person is taken, it must be taken with malice aforethought, express or implied; but it is not necessary, as I said before, for that malice to exist for any length of time previous to the killing. It can be there for a moment or period of time, however brief, but it has to be there when the deed is done. Now, the law will imply malice from any wanton, thoughtless, cruel or depraved act—any act going to show an intention on the part of a party which shows a heart devoid of all social instincts and fatally bent on mischief. If you, Mr. Foreman, were to throw a dynamite cartridge in that crowd out there, although you didn't intend to kill any one, and it exploded and killed a lot of people, the law would imply malice from that act; or if you were to draw a pistol and shoot into that crowd, although you didn't intend to kill any one, nevertheless the law would imply malice from that act, because it would be a wanton, cruel, thoughtless, and depraved act on your part, and that is what the law means by implied malice. Now, ordinarily, the law will presume malice from any killing—that is, where one man kills another, and that fact alone is established, the law will ordinarily presume malice from the killing; but where all the facts

and circumstances are developed on the trial of the case, that presumption no longer arises—it becomes one of proof then, and must go to the jury, and they must decide from all the facts and circumstances of the case whether or not malice existed. It becomes a matter of fact, then, the same as any other fact in the case, and the State is bound to prove it, on the ground that he who affirms must prove. So, as I said before, where all the facts and circumstances attending a homicide are developed in the testimony, the presumption of malice no longer exists, but it becomes a matter of proof, and it is for the jury to say, from the facts and circumstances testified to in the case, whether or not it was done with malice aforethought, expressed or implied. Now, in this case, if you conclude from the testimony that the defendant killed the deceased, and that he killed him with malice aforethought, express or implied, then he is guilty of murder; and it is for you to say, by your verdict, whether he should hang or go to the penitentiary for life, because the law makes this distinction, and leaves it to the jury. Wherever the jury are satisfied that the defendant is guilty of murder, and say: "We find the defendant guilty of murder," the Judge will have to impose the extreme penalty—death; but if you conclude that the defendant is guilty of murder, but should not suffer the extreme penalty of the law, which is death, then you say: "We find the defendant guilty of murder, and recommend him to the mercy of the Court," and then it is the duty of the Judge and incumbent upon him to send him to the penitentiary for the term of his natural life. So, if the facts and circumstances in this case satisfy you, beyond a reasonable doubt, that the defendant here is guilty of murder—that is, he took the life of the deceased with malice aforethought, express or implied—then it is for you to say whether or not you convict him with or without a recommendation to mercy. If, however, you are not satisfied in this case that the defendant is guilty of murder, then your next inquiry will be whether or not the defendant is guilty of manslaughter. Now, manslaughter is the killing of any

human being without malice, in sudden heat and passion, and upon sufficient legal provocation. Now, if the testimony here satisfies you that the defendant took the life of the deceased; that he did it without malice; that he did it in sudden heat and passion, upon sufficient legal provocation, your verdict will be guilty of manslaughter. Now, as to what that legal provocation is, is sometimes very difficult to define. If the deceased here, by any acts on his part, did anything to the defendant which was calculated to highly inflame and exasperate a man, and his passion was aroused by any act, word or deed of the deceased, and while he was in an angry and inflamed condition of mind, in sudden heat and passion, he took the life of the deceased, without malice, then he would be guilty of manslaughter. Now, if any one were to walk up to you on the street, Mr. Foreman, and slap your jaws, or do anything of that sort, and exasperate you so that you were hardly responsible for what you did, and you got into a very exasperated and inflamed condition of mind, and on the spur of the moment, in sudden heat and passion, pulled out a pistol and killed that man, that, in the eye of the law, would be sufficient legal provocation. Or suppose some of you were married men, and a fellow were to walk up to you and were to state that some female member of your family was a prostitute, some decent, respectable female member of your family, was a prostitute, and said it in such an angry, and rude, and insulting, and insinuating manner that you believed he meant exactly what he said, and it aroused your passions and inflamed them so that you took his life on the spur of the moment, not with malice but in sudden heat and passion, then the law would say that was sufficient legal provocation, the jury might say that was sufficient legal provocation, and upon that find the defendant guilty of manslaughter. Now, the difference between murder and manslaughter is this: There can be no murder without malice aforethought, express or implied; and manslaughter is where a human being's life is taken by another in sudden heat and passion, without malice, upon sufficient

legal provocation.    Now, as I said before, if the testimony
in the case—and you are the sole judges of that—satisfies
you that the defendant here took the life of the deceased in
sudden heat and passion, and upon sufficient legal provoca-
tion, and the deceased said anything, or did anything, to the
defendant which was calculated to highly exasperate and
inflame and arouse his passion, so that he had an uncon-
trollable impulse, and he was so inflamed with passion that
he hardly knew what he was doing, and in that heat and
passion he took the life of the deceased here, without mal-
ice, then you can find him guilty of manslaughter.

Now, the next grade of homicide is self-defense.   Any
man has a right to defend himself under certain conditions.
But two things are necessary, and one is, he must be without
fault in bringing on the difficulty—that is, you can't go and
engage a party in a quarrel and get into a fight with him,
and bring about yourself a state of affairs so that afterwards
it is necessary for you to take the life of that party to save
your own life, or to save your body from serious bodily
harm; the law does not allow that.   It says the party who
claims self-defense must come into Court with clean hands.
You can't bring about a state of affairs on your own part
which necessitates your taking the life of a human being,
and then plead self-defense.   The law says: "No, you are not
without fault in bringing on this difficulty; you brought it
on yourself, and after you got into this fight, it probably did
become necessary to take the life of the man you brought
on the row with, to save your life, or to save yourself from
serious bodily harm.   But you were not without fault in
bringing on this difficulty, and you can't plead self-defense;
you were not without fault."   So, as I said before, in matters
of self-defense, the party pleading it must establish, first, that
he was without fault in bringing on the difficulty; and, sec-
ondly, the facts and circumstances surrounding him must be
such, in the opinion of the jury—not his opinion, but in the
opinion of the jury—as to justify a man of ordinary reason
and firmness that he was in actual immediate danger of loss

of life or great bodily harm, from which he had no probable means of escape; then, in that event, he has a right to take the life of his assailant.   Now, it is not what the party themselves think about it—because some men are more cowardly in apprehending danger when there is none, or more rapid than others; some men are more nervous than others.   But the facts surrounding him must be such, in the opinion of the jury, as would justify a man of ordinary reason and courage, justify him in believing his life was in danger, or he was in danger of serious bodily harm.

Now, I charge you, as matter of law, that if you see a party stealing your property, if you see a party committing a larceny, you have a right to arrest that party.   If you have a piece of property lying on that table, and I walk up and take that property in your presence, you have a right to repossess yourself of that property, and if I kill you while you are trying to repossess yourself of your property, if I kill you with malice aforethought, express or implied, then I am guilty of murder.   If you were attempting to repossess yourself of your property, and by reason of that you inflamed my passions and exasperated me so highly, that on the spur of the moment, without thinking, and being aroused with passion, and without any malice on my part, I killed you in sudden heat and passion, without malice, upon sufficient legal provocation, then I am guilty of manslaughter.

Now, you have heard the testimony in this case, and with that I have absolutely nothing to do.   I could not, if I wanted to, and I have no desire to interfere with your rights in that matter in the slightest degree.   You are the sole judges of the testimony, and it is not for me to say or to intimate my opinion of the testimony; I could not do it, if I wanted to, intimate what my opinion of the testimony is.   You will take the law as I have given it to you, and applying the testimony to the law, say whether the prisoner be guilty of murder, guilty of manslaughter, or not guilty.   It is the duty of the State in all cases to make out its case beyond a reasonable doubt to your satisfaction.   By reasonable doubt,

we don't mean a fanciful or whimsical doubt, but a reasonable doubt; a reasonable, and substantial, and well founded doubt—a doubt arising from the testimony in the case. If the State has satisfied you beyond a reasonable doubt that the defendant is guilty of murder, then you will find him guilty, with or without a recommendation to mercy, as you see proper. If the State has not satisfied you beyond a reasonable doubt that the defendant is guilty of murder, then you will consider whether or not the State has satisfied you, under the testimony in the case beyond a reasonable doubt, that the defendant is guilty of manslaughter; and if you conclude that it has, you will find him guilty of manslaughter. But if you are not satisfied by the testimony in this case beyond a reasonable doubt, that the defendant is guilty of murder or manslaughter, you will say not guilty, and acquit him; or if you believe that he acted in self-defense, you will acquit him. I have been requested by defendant's counsel to charge you as follows:

"1st. In all cases of homicide, where the facts attending the killing have been fully developed by the testimony adduced in the trial of the case, the jury cannot infer or imply malice from the use of a deadly weapon, but it is incumbent upon the State to prove malice by the testimony, and the jury cannot convict of murder in such cases unless malice is proved." I have already substantially charged you that before in other language.

"2d. Every citizen has the legal right to resist the illegal restraint of his personal liberty, and if, in resisting such illegal restraint of his liberty, he takes the life of the person attempting to arrest him or restrain his liberty, the killing, under such circumstances, will not amount to murder." I charge you that as good law, with this addition, that it will not be murder unless he fired the fatal shot or took the life of the party who arrested him, with malice aforethought, express or implied. If he did take it with malice aforethought, express or implied, it would be murder; but if he took it in sudden heat or passion, and upon sufficient legal

provocation, it wouldn't *be murder, but simply manslaughter.*

"3d. Where one person seizes another in a rude and violent manner and against his will, such seizure is in law an assault and battery, and if such assault and battery produces sudden heat and passion, and the party kills his assailant while under the influence of such sudden heat and passion, and without any malice, the assault and battery would amount in law to a legal provocation, and the killing under such circumstances will not amount to murder." I charge you that as a matter of law; that is good law—that is, where one person seizes another in a rude and violent manner, without authority so to do; if he has authority to make the seizure, it wouldn't be an assault and battery, if he had a warrant or had a right to make the arrest. If a felony was being committed in his presence, in his view, he would have a right to make the arrest.

"4th. If you find from the testimony that the deceased, Mr. Suber, seized the defendant in a rude and violent manner and against his will, the deceased was guilty of an assault and battery upon the defendant; and if such assault and battery aroused heat and passion in the defendant, and he killed Suber while in such heat and passion, and without malice, the assault and battery amounted to such a legal provocation as will reduce the killing from murder to manslaughter." I charge you that as matter of law, if the testimony satisfies you that Mr. Suber didn't have any authority to make the arrest.

"5th. If the deceased, Suber, seized the defendant in a rude and violent manner and against his will, and refused to release the defendant when requested so to do, and it was necessary for the defendant to take the life of Suber in order to effect his release, the killing is excusable in law, and you must acquit the defendant." I refuse to charge you that. If a man comes up and lays his hands on me, and I tell him, turn me loose, and he refuses to do it, and I turn around and kill him, with malice aforethought, express or implied, it is murder on my part. If a man comes up and puts his

hands on me, I have a perfect right to repel force by force, and to use a sufficient amount of force to get rid of him, no matter how much force that is; and, if necessary, if he is illegally trying to restrain me of my liberty, and it is necessary for me to use a sufficient amount of force to take his life, I have a right to do it; but, at the same time, the moment a man comes up and puts his hands on you, and says, "I arrest you," and you say, "Turn me loose," and turn around and draw a pistol and kill him, with malice aforethought, express or implied, you are guilty of murder.

"6th. If the deceased, Suber, seized the defendant in a rude and violent manner and against his will, the defendant had the right to defend himself from such an assault and battery; and if the defendant, during the progress of the difficulty, and being himself free from fault, believed his life to be in danger, or that he would receive great bodily harm at the hands of Suber, and that he took the life of Suber while acting under such belief, and you believe that a man of ordinary firmness and courage, in such circumstances, would have been justified in such belief, then you must acquit the defendant." I charge you that. That is good law.

"7th. If you have a reasonable doubt as to whether the defendant killed Suber from malice or while in sudden heat and passion, aroused by a legal provocation, you must give the defendant the benefit of such reasonable doubt, and find him guilty of manslaughter." I charge you that.

"8th. If you have any reasonable doubt as to whether the killing was done in sudden heat and passion, and upon a sufficient legal provocation, or that he killed him to escape from an illegal arrest or restraint of his liberty, and it was necessary in order to escape, you must give the defendant the benefit of the doubt, and acquit him." I charge you that, in connection with what I have charged you throughout the whole case.

"9th. If you have a reasonable doubt as to whether the killing was done in sudden heat and passion, upon sufficient legal provocation, or that he killed him to preserve his life

or save himself from serious bodily harm, and that a man of ordinary firmness and courage would have believed himself in danger of his life or serious bodily harm, in such circumstances, and that he was free from fault in bringing about the difficulty, you must give defendant the benefit of such reasonable doubt, and acquit him." I charge you that.

Now, gentlemen, you have the whole case. The form of your verdict will be, if you conclude the defendant is guilty of murder, you will say: We find the defendant guilty, and sign your name as foreman. If you conclude that he is guilty of murder, and desire to recommend him to the mercy of the Court, which will have the effect I have told you, then you will say: We find the defendant guilty, and recommend him to the mercy of the Court, and sign your name as foreman. If you conclude he is not guilty of murder, but is of manslaughter, then you will say: We find the defendant guilty of manslaughter, and sign your name as foreman. If you conclude that he is not guilty, or that he acted in self-defense, then you will say: We find the defendant not guilty, and sign your name as foreman.

Mr. McDonald: Will your Honor charge the jury this: That even if Mr. Suber had a right to arrest the prisoner, he had no right to ill treat him? The Court: I charge you, as a matter of law, that when a party has a right to arrest another, he only has a right to use the amount of force that is necessary to make the arrest; he must make the arrest peaceably.

Verdict guilty.

The defendant appeals from the verdict, judgment, and sentence, and also from the refusal of the Court to grant a new trial, on the following exceptions:

I. For that his Honor erred in charging the jury as follows: "Now, the law will imply malice from any wanton, thoughtless, cruel or depraved act; any act going to show an intention on the part of the party which shows a heart devoid of all social instincts, and fatally bent on mischief;" when the same was inapplicable to the facts of this case,

and he should have charged the jury that the law creates no presumption of malice when all the facts and circumstances attending the homicide have been developed in the testimony and are before the jury.

II. For that his Honor erred in charging the jury as follows: "Now, as I said before, if the testimony in this case, and you are the sole judges of that, satisfies you that the defendant here took the life of the deceased in sudden heat and passion, and upon sufficient legal provocation, and the deceased said anything or did anything to the defendant which was calculated to highly exasperate and inflame and arouse his passion, so that he had an uncontrollable impulse, and he was so inflamed with passion that he hardly knew what he was doing, and in that heat and passion he took the life of the deceased here, without malice, then you can find him guilty of manslaughter;" when, it is submitted, such charge placed a greater burden of proof upon the defendant than that required of him by the law, and prescribed a stricter rule than that prescribed by the law as to the degree of heat and passion necessary to reduce the killing from murder to manslaughter, and also took away from the jury the right to consider and determine the degree of heat and passion necessary to reduce the killing from murder to manslaughter; and such charge was also in violation of section 26 of article V. of the Constitution of the State.

III. For that his Honor erred in charging the jury as follows: "Now, the next grade of homicide is self-defense. Any man has the right to defend himself under certain conditions; but two things are necessary, and one is, he must be without fault in bringing on the difficulty; that is, Mr. Foreman, you can't go and engage a party in a quarrel, and get into a fight with him, and bring about yourself a state of affairs so that afterwards it is necessary for you to take the life of that party to save your own life, or to save your body from serious bodily harm; the law does not allow that. It says the party who claims self-defense must come into Court with clean hands. You can't bring about a state of

affairs on your own part which necessitates your taking the life of a human being, and then plead self-defense. The law says: "No, you are not without fault in bringing on the difficulty; you brought it on yourself, and after you got in this fight, it probably did become necessary to take the life of the man you brought on the row with, to save your life, or to save yourself from serious bodily harm. But you are not without fault in bringing on this difficulty, and you can't plead self-defense, you were not without fault;" when such charge was not warranted by the facts in this case, and he should have charged the jury, that if a person brings on a difficulty with another person, and such other person seeks to avoid the difficulty, by a retreat or otherwise, and is forced by necessity to kill his assailant, then in that case the burden of proof would be on the State to show that the person committing the homicide was in fault, before he could be convicted of either murder or manslaughter.

IV. For that his Honor erred in charging the jury, in the facts and circumstances of this case, that a person, before he is entitled to set up the plea of self-defense, must come into Court with clean hands, as such charge has a tendency to mislead the jury.

V. For that his Honor erred in refusing or neglecting, when requested so to do by the defendant's counsel, to charge the jury as to the right of private persons to arrest without a warrant, as laid down in sections 1 and 2 of the Criminal Code, vol. 2 of the Revised Statutes of 1893.

VI. For that his Honor erred in charging the jury as follows: "Now I charge you, as a matter of law, that if you see a party stealing your property, or if you see a party committing a larceny, you have a right to arrest that party;" when he should have charged that a private individual could only make an arrest in the cases mentioned and prescribed in sections 1 and 2 of the Criminal Code, Revised Statutes 1893.

VII. For that his Honor erred in charging the jury as follows: "If you have a piece of property, Mr. Foreman,

27—50

lying on that table, and I walk up and take the property in your presence, you have a right to repossess yourself of that property, and if I kill you while you are trying to repossess yourself of your property, if I kill you with malice aforethought, express or implied, then I am guilty of murder;" when he should have charged the jury that a person, in such circumstances, could only repossess himself of his property in an orderly and quiet manner, and without a breach of the peace.

VIII. For that his Honor erred in supplementing the charge of the defendant's second request to charge, by charging as follows: "I charge you that as good law; with this addition: that it will not be murder, unless he fired the fatal shot, or took the life of the party who arrested him, with malice aforethought, express or implied. If he did take it with malice aforethought, express or implied, it would be murder; but if he took it in sudden heat and passion, and upon sufficient legal provocation, it wouldn't be murder, but simply manslaughter."

IX. That his Honor erred in refusing to charge the defendant's fifth request to charge, which was as follows: "If the deceased, Suber, seized the defendant in a rude and violent manner and against his will, and refused to release the defendant when requested so to do, and it was necessary for the defendant to take the life of Suber in order to effect his release, the killing is excusable in law, and you must acquit the defendant;" and further erred in charging, instead thereof, the following: "If a man comes up and lays his hands on me, and I tell him turn me loose, and he refuses to do it, and I turn around and kill him, with malice aforethought, express or implied, it is murder on my part. If a man comes up and puts his hands on me, I have a perfect right to repel force by force, and to use a sufficient amount of force to get rid of him, no matter how much force that is; and, if necessary, if he is illegally trying to restrain me of my liberty, and it is necessary for me to use a sufficient amount of force to take his life, I have a right to do it; but,

at the same time, the moment a man comes up and puts his hands on you, and says, 'I arrest you,' and you say, 'Turn me loose,' and turn round and draw a pistol, and kill him with malice aforethought, express or implied, you are guilty of murder;" when such charge was wholly and entirely inapplicable to the facts of the case, and had a tendency to prejudice the defendant in the minds of the jury.

X. For that his Honor erred in qualifying the charge of the defendant's fourth request to charge, by using the following language: "I charge you that as matter of law. If the testimony satisfies you that Mr. Suber didn't have any authority to make the arrest;" thereby violating section 26 of article 5 of the Constitution of the State, by charging on the facts of the case.

*Messrs. J. E. McDonald* and *Jas. W. Hanahan*, for appellant, cite: *Improper to instruct jury as to implied malice, when all facts are shown:* 6 S. C., 186; 15 S. C., 156. *Request not in writing:* 31 S. C., 525. *Arrest without warrant:* Crim. Code, 1 and 2; 16 S. C., 493; 1 Hill, 341. *What heat and passion reduces to manslaughter:* 4 Dev. & Balt. (N. C.), 491.

*Solicitor J. K. Henry*, contra, cites: *As to first exception:* 47 S. C., 507. *As to second:* 38 S. C., 346. *As to third:* 47 S. C., 27, 74; 10 Rich., 347. *As to fourth:* 28 S. C., 36; 24 S. C., 283. *As to fifth:* Crim. Code, 1 and 2.

Sept. 24, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appellant, under an indictment charging him with the murder of James E. Suber, was found guilty and sentenced to be hanged. His grounds of appeal relate wholly to the charge of the Circuit Judge. The charge and the exceptions thereto appear in the official report. A general summary of the facts which the testimony offered by the State tended to prove may make more clear the questions involved.

The deceased, James E. Suber, kept a store at Lyles

Ford, in Fairfield County. About 7 o'clock P. M., August 10th, 1896, defendant was in the store. Deceased having gone out of the store for a brief while, returning, saw defendant at his money drawer, and hollered at him. Defendant ran out of the store. One witness said that defendant after taking his hand out of the money drawer attempted to put it in his pocket, and some money fell on the floor. Deceased, after examining the drawer, followed defendant, and called out to him, "Hold on, Henry, you have been in my money drawer and taken my money. You had no business to do it, and I want it." Defendant walked on, and deceased overtook him a short distance from the store, and laid his hand on defendant's shoulder from behind. Defendant turned, and deceased caught hold of the lapel of defendant's coat, and demanded that he give up the money. Defendant denied having taken his money, and demanded to be turned loose. Deceased refused to turn him loose unless he would give up the money. They began to pull at each other, and in the scuffle deceased threw defendant down. They arose, and in the struggle following, defendant fired his pistol and jerked loose. Deceased attempted to seize defendant again, and defendant shot the second time. Deceased was told by a bystander to get his gun and kill defendant. Deceased started to his store, when defendant fired at him the third time, missing him. Defendant then moved off rapidly. Deceased soon reappeared from his store with a gun in his hand, but when told to pursue and shoot defendant, he said, "No, I was not mad about his stealing my money; I only wanted it, and he has taken my money and shot me, but I will not shoot him now." Deceased was wounded in two places, one ball entering the bowels from the right side, the other a little below the left nipple, and died next day. In his dying declarations, admitted in evidence, he said he saw defendant in his money drawer, and hollered at him; that defendant made one more rakes at the drawer, and ran out behind the counter and jumped out of the door; that he (deceased) went to the drawer and saw he had taken money;

that he followed him, put his hand in the collar of defendant's coat, and told him to give him his money; that he demanded the money two or three times; that defendant wouldn't give it up, and that he tripped defendant; that he had no idea of hurting defendant; that he tripped him up twice—that he didn't intend throwing him down, but intended to scare the money out of him; that as he rose the second time, defendant shot him; that he took his hands off defendant, being dazed, and attempted to change his position, but before he could do it, defendant shot him again; that he went in the store and got his gun and came to the side door, when defendant was twenty-five yards off. He further said that defendant attempted to bite him on the arm, and he told defendant if he did he would maul him. He further said that he had done wrong in putting his hands on defendant, but he had no idea defendant had a pistol; that defendant shot him from under cover, and he did not see the pistol.

1. It is urged as the first ground of appeal that the Circuit Judge erred in charging that "the law will imply malice from any wanton, thoughtless, cruel or depraved act, any act going to show an intention on the part of the party which shows a heart devoid of all social instincts and fatally bent on mischief." It was conceded in argument that this charge was theoretically correct, but it is claimed that it was inapplicable to the facts of the case, and that he should have charged the jury that the law creates no presumption of malice when all the facts and circumstances attending the homicide have been developed in the testimony. This exception is not well taken. It was quite applicable and appropriate in this case for the Judge in his charge to explain the meaning of implied malice, the indictment being for murder. The record further discloses that immediately after explaining implied malice, he expressly charged precisely as it is claimed he should have charged.

2. It is contended that there was error in the following

charge: "Now, as I said before, if the testimony in this case, and you are the sole judges of that, satisfies you that the defendant here took the life of the deceased in sudden heat and passion, and upon sufficient legal provocation, and the deceased said anything or did anything to the defendant which was calculated to highly exasperate and inflame and arouse his passion, so that he had an uncontrollable impulse, and he was so inflamed with passion that he hardly knew what he was doing, and in that heat and passion he took the life of the deceased without malice, then you can find him guilty of manslaughter." It is objected that this charge (1) prescribed a stricter rule than that required by law as to the degree of heat and passion necessary to reduce the killing from murder to manslaughter; (2) took from the jury the right to determine the degree of heat and passion necessary to reduce the killing from murder to manslaughter; and (3) was in violation of art. 5, sec. 26, of the Constitution, forbidding Judges from charging the jury in respect to matters of fact. Of the second and third grounds above, nothing more need be said than that they are not tenable. The first ground deserves more extended notice. The Circuit Judge correctly defined manslaughter as the killing of any human being, without malice, in sudden heat and passion, and upon sufficient legal provocation. It is contended, however, that he was not authorized to go further, and add words indicating that the heat and passion should amount to an "uncontrollable impulse," and that passion should so inflame that "he hardly knew what he was doing." In Desty's Criminal Law, § 128d, it is stated that adequate provocation and ungovernable passion must concur—that to reduce murder to manslaughter a provocation must be established as sufficient to render the passion irresistible. In Clark's Criminal Law, p. 165, the doctrine is laid down, "that the provocation must be such as the law deems adequate to excite uncontrollable passion in the mind of a reasonable man." Mr. Bishop in his Criminal Law, vol. 2, p. 386, § 697, says: "The sufficiency of the

passion to take away malice and reduce what would be mur-
der to manslaughter is so much a question of law that it is
difficult to say on the authorities how intense in fact it must
be. * * * The passion must be such as is sometimes called
irresistible, yet it is too strong to say that the reason of the
party should be dethroned, or he should act in a whirlwind
of passion." So in Clark Crim. Law, p. 167, it is said: "The
provocation must deprive one of the power of self-control,
but it need not entirely dethrone reason." This is supported
by the following citations: *Territory* v. *Catton*, 16 Pac., 902;
*Maher* v. *People*, 10 Mich., 212; *Brooks* v. *Com.*, 61 Pa. St.,
352; *Davis* v. *People*, 114 Ill., 86. See, also, *People* v. *Free-
land*, 6 Cal., 96. In the case of *State* v. *Hill* (N. C.), 4 Dev.
& Bat., 491, relied on by appellant, Gaston, J., said: "We
nowhere find that the passion, which in law rebuts the
imputation of malice, must be so overpowering as for the
time to shut out knowledge and destroy volition. All the
writers concur in representing this indulgence of the law
to be a condescension to the frailty of the human frame,
which, during the *furor brevis*, renders a man deaf to the
voice of reason, so that, *although the act done was inten-
tional of death*, it was not the result of malignity of heart,
but imputable to human infirmity."

"The provocation of the deceased must be the direct and
controlling cause of the passion, and it must be such as
naturally and instantly, to produce in the minds of persons
ordinarily constituted, the highest degree of exasperation,
rage, anger, sudden resentment or terror, rendering the mind
incapable of cool reflection." 9 Enc. Law, p. 579. In
*State* v. *Smith*, 10 Rich., 347, the passion which reduces a
felonious killing to manslaughter is characterized as a "tem-
porary phrensy excited by sufficient legal provocation;" and
in *State* v. *McCants*, 1 Spear, *390, Judge Wardlaw speaks
of this passion as "the violent impulse of anger outstripping
the tardier operations of reason * * * provoked by suffi-
cient cause." It may be concluded, therefore, that "the
sudden heat and passion upon sufficient legal provocation,"

which mitigates a felonious killing to manslaughter, while
it need not dethrone reason entirely, or shut out knowledge
and volition, must be such as would naturally disturb the
sway of reason and render the mind of an ordinary person
incapable of cool reflection, and produce what, according
to human experience, may be called an uncontrollable im-
pulse to do violence. We do not think the charge of the
Judge went beyond the limits above prescribed, and was,
therefore, not error, in so far as his charge relates to *acts*
which the law deems adequate to provoke such passion.
But it is well settled in this State that where death was
caused by the use of a deadly weapon (as in this case), pro-
vocation by words only, no matter how opprobrious
and hard to be borne, would not be sufficient to re-
duce the killing to manslaughter. *State* v. *Jacobs*,
28 S. C., 29; *State* v. *Levelle*, 34 S. C., 129. Therefore, the
Judge erred in charging that "if the deceased *said* anything
to the defendant which was calculated to highly exasperate,
&c." But, though erroneous in this respect, it was most
favorable to the prisoner, in view of the fact that deceased
charged the defendant with stealing his money just before
the fatal shot. The error was harmless, and, therefore,
not reversible.

3. The third and fourth exceptions may be considered
together. We think a reference to the charge as a whole
on the subject of self-defense will show that the
Judge committed no error. The expression that the
party who claims self-defense must come into Court
with clean hands, while not strictly appropriate, was so ex-
plained by other language as to show the jury clearly that
the Judge meant nothing more than the law required, viz:
that the party who sets up the plea of self-defense must be
without fault in bringing on the necessity to take human
life, for he said immediately afterwards: "You can not bring
about a state of affairs on your own part which necessitates
your taking the life of a human being, and then plead self-

defense." See *State* v. *Beckham*, 24 S. C., 283.   These exceptions are overruled.

4. The fifth exception is as follows: "V. For that his Honor erred in refusing and neglecting, when requested so to do by the defendant's counsel, to charge the jury as to the right of private persons to arrest without a warrant, as laid down in sections 1 and 2 of Criminal Code, vol. 2, of the Revised Statutes of 1893." As to this fifth exception, perhaps it is too general to require consideration; but, waiving this, does the record disclose that the Circuit Judge refused or neglected to charge any request presented to him in writing, as required by Rule XI. of the Circuit Court? It appears that at the beginning of the argument, counsel for defendant read to the Court and requested the Court to charge as therein laid down sections 1 and 2 of the Criminal Code, which are as follows: "Sec. 1. Upon view of a felony committed, or upon certain information that a felony has been committed, any person may arrest the felon and take him to a judge or trial justice, to be dealt with according to law. Sec. 2. It shall be lawful for any citizen to arrest any person in the night time, by such efficient means as the darkness and the probability of his escape render necessary, even if his life should be thereby taken, in cases where he has committed a felony, or has entered a dwelling house with evil intent, or has broken or is breaking into an out-house with a view to plunder, or has in his possession stolen property, or being under circumstances which raise just suspicion of his design to steal or to commit some felony, flees when he is hailed." Rule XI. of the Circuit Court provides that "Before the argument of the case commences, the counsel on either side shall read and submit to the Court, in writing, such propositions of law as they propose to rely on, which shall constitute the request to charge, &c." We do not think a request to charge presented in the manner described is a substantial compliance with this rule. See *Molair* v. *Railway Co.*, 31 S. C., 510. The value of the rule requiring such requests

to be in writing, so as to promote accuracy and certainty, would be greatly impaired by holding that the reading of extracts from statutes, decisions, and text-books, with oral request that such be charged to the jury, is a substantial compliance therewith. Justice and its orderly administration will be promoted by insisting on compliance with the provisions of this rule. It may be that a case might arise in which the Court *ex gratia* would waive technical compliance with a rule made merely for the orderly conduct of the business of a Court. But in this case such necessity does not arise.

5. The sixth exception is as follows: "VI. For that his Honor erred in charging the jury as follows: 'Now, gentlemen, I charge you, as matter of law, that if you see a party stealing your property, or if you see a party committing a larceny, you have a right to arrest that party,' when he should have charged that a private individual could only make an arrest in the cases mentioned and prescribed in secs. 1 and 2 of the Criminal Code, Revised Statutes 1893." At common law, a private person had the right to arrest, without warrant, any person who committed or attempted to commit a felony in his view. In *State* v. *Anderson*, 1 Hill, 212, the Court said, that in order to justify an arrest by private persons, the proof must show that a felony was committed, and that the prisoner was the perpetrator. Sec. 1 of the Criminal Code, quoted above, allows any person to arrest upon view of a felony committed, or upon certain information that a felony has been committed. In this case the evidence tended to show that defendant had stolen some money belonging to deceased, in his view, from a money drawer in deceased's store, but no evidence was offered to show the amount of the money stolen. If the amount stolen was less than $20, then no felony was committed, unless the larceny was compound larceny. There was no evidence in the case that the store was used as a dwelling. Hence the jury may have concluded from the evidence that defendant had committed a simple petit lar-

ceny.    Such a larceny in this  State is a misdemeanor and
not a felony.    Sec. 2 of the Criminal Code allows any citi-
zen to arrest *in the night-time* under certain circumstances
and for certain offenses, among  others, when the offender
"has in  his possession stolen property."    The evidence
tended to show that the  larceny took  place a short while
before 7.30 P. M., August 10, 1896, at which hour it appears
deceased was shot.    From this evidence alone, it cannot be
said with certainty that the alleged arrest was attempted in
the night-time, so as to make  sec. 2 applicable.    It seems
clear, therefore, in view of the evidence in the case, that the
Circuit Judge erred in instructing the jury, as he did, as to
the right of any person to arrest for larceny committed, in
failing to distinguish between larceny that is felony and a
larceny that is misdemeanor.    For a simple  petit larceny,
a private person has no right to arrest without warrant.    It
may seem hard that one has no right to arrest for a petit
larceny of his own  property, committed  in his view, but
such is the law.    Whether the alleged  arrest was legal or
illegal, was a vital question in the case.    From the charge
of the Judge, the jury had a right to infer that deceased had
the right to arrest defendant, and, therefore, defendant had
no right to resist, and this may have controlled them in
determining  the question whether the defendant killed in
malice, or in sudden heat and passion, upon the provocation
of an unlawful arrest.    While it may be murder, under
certain circumstances, to kill in resisting an unlawful arrest,
generally it is manslaughter only, if  done in heat and pas-
sion, provoked by the illegal arrest, and not with malice.

6.  The seventh exception alleges error in  the following
charge: "If you  have a  piece of  property, Mr. Foreman,
lying on that table, and I walk up and take the pro-
perty in your presence, you have a right to repossess
yourself of your property, and if I kill you while you
are trying to repossess yourself of your property—if I kill
you with malice aforethought, expressed  or implied—then
I am guilty of murder."    It is contended that the error here

consists in not charging the jury that a person, in such circumstances, could only repossess himself of his property in an orderly and quiet manner, and without a breach of the peace. In so far as the Judge instructed the jury that a killing with malice aforethought is murder, the charge is unobjectionable; but it was calculated to mislead the jury, to tell them that when a person takes the property of another in his presence, that the latter has the right to repossess himself of that property, without explanation that the exercise of such right must be without a breach of the peace. Under such circumstances, one could not lawfully resort to violence to regain his property. The law provides other adequate means to redress wrongs of that character more consistent with the peace and safety of society.

The remaining exceptions were not argued, and we content ourselves with overruling the same without extended consideration.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MR. JUSTICE POPE dissents.