HENRY OLDS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A motion to quash an indictment because of alleged defects therein must be exhibited by the record proper, and cannot be considered by the appellate court when shown only by the bill of exceptions.

2. It is not error for the trial court to refuse to instruct the jury that the good character of the defendant among his neighbors is of value, especially in doubtful cases, and

if they believe from the evidence that the defendant bears a good character in the community in which he lives, they might consider such character in connection with all the other evidence in the case, and if the evidence in regard to character raises a reasonable doubt in their minds as to the guilt of the defendant, then they should find him not guilty.

3. The proper way to instruct the jury when evidence of good character is produced is that such evidence must be considered in connection with all the other evidence in the case, and when considered as a whole if the evidence raises a reasonable doubt of guilt there should be an acquittal.

4. A charge that is not entirely accurate, but favorable to the accused, and in no way prejudicial to him, is no ground for a reversal of the judgment.

5. An intentional killing may not be murder in the first degree when done in the heat of passion or anger and following a sufficient provocation so close in time as to raise the presumption that it was the result of sudden impulse and without premeditation, or when committed under such circumstances as to show that the mind was not fully conscious of its own intention.

6. There is no prejudicial error to an accused in an instruction to the jury on a charge of murder in the first degree that the fact that the defendant may have been at the time of the killing under the influence of anger or resentment would not of itself be sufficient to preclude the idea of premeditation, unless the degree of feeling was such as to cloud the senses of the accused, or to impair his reason, and not then if subsequently to forming the design and before executing it sufficient time elapsed for an ordinarily reasonable man to have regained his self-possession, nor would such anger be sufficient to exclude the idea of premeditation if there was not such provocation for it as would be calculated to excite such anger or passion as might obscure the reason of an ordinarily reasonable man in the same situation and under the same cir-

cumstances, and mere words, no matter how insulting or abusive, would not be sufficient provocation, unconnected with any acts or other circumstances calculated to excite anger or passion of a reasonable man.

7. It is not error in defining the right of self-defense, or justifiable homicide, in acting on the belief of danger, to instruct the jury that unless such belief of danger is reasonable, that is unless a reasonably cautious and prudent man would entertain the same belief from the same appearances. it would be no defence, even though it was an honest belief of danger.

8. A witness for the State testified to acts and declarations of the accused and the deceased at the time of the killing, and impeaching witnesses for the defense testified that the State witness made statements after the killing in conflict with the testimony given for the State and indicating that the occurrences at the time of the killing were different from those stated by the witness on the stand: Held, it was not error for the court to instruct the jury that they could not consider the testimony of the impeaching witnesses for the purpose of determining the manner and cause of the death of deceased, or what the acts of either the deceased or acused were on that occasion, except so far as the credibility of the State witness might bear on such questions, and the only purpose for which they could consider such impeaching testimony was to determine the truth or falsity of the testimony of the State witness, whether it was worthy of belief.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the Court.

C. L. Wilson, for Plaintiff in Error;

William B. Lamar, Attorney-General for the State.

MABRY, J.

Plaintiff in error was indicted for murder and convicted of the crime charged with a recommendation of mercy.

The first error assigned on the writ of error to the judgment of the court is that the motion of defendant below to quash the indictment was improperly overruled. The only evidence in the transcript that such a motion was made is contained in a recital in the bill of exceptions to the effect that the motion was made on enumerated grounds questioning the sufficiency of the indictment. The rule of practice in this court is that a motion to quash an indictment, or in arrest of judgment, on the ground of the insufficiency of the indictment must be exhibited by the record proper, and can not be considered when shown only by the bill of exceptions. Caldwell v. State, 43 Fla. 545, 30 South. Rep. 814, and cases therein cited. The first assignment of error can not, therefore, be sustained.

The court instructed the jury that there was evidence before them of good character of the accused, and that they would give to it such weight as they thought it entitled to, and if it raised in their minds a reasonable doubt as to the guilt of the accused he would be entitled to the benefit of the doubt. This was excepted to by the accused.

The court refused, at the request of the defendant, to instruct the jury that "the good character of a defendant among his neighbors in a community in which he resides is of value, especially in doubtful cases, and if you believe from the evidence in this case that defendant bears a good character or reputation in the community in which he lives, you may consider such character in connection with all the other evidence in the case, and if the evidence in regard to his character raises a reasonable doubt in your

minds as to the guilt of the defendant, then you will find
the defendant not guilty." The refusal was excepted to,
and the two exceptions constitute the second and fifth
assignments of error. The case of Bacon v. State, 22 Fla.
51, is cited to support the assignments. In that case the
court instructed the jury that the defendants had the
right to put in evidence their good character, and it should
be considered by the jury in connection with the other ev-
idence from which they were to determine their verdict,
and that the evidence of character should have such
weight in connection with all the other evidence as the
jury believed it entitled to. There was no exception to
the charge and no question raised as to whether it would
be error for the court to decline to charge specially on the
evidence of character. In passing upon the sufficiency of
the evidence to sustain the verdict this court approved
the charge given, and held that good character of a defend-
ant among his neighbors in the community in which he
resides is of value, especially in doubtful cases, and some-
times will create a doubt, when without it none would ex-
ist; that such evidence, however, was intended for the con-
sideration of the jury, and it was for them alone to deter-
mine whether, when considered with the other evidence
in the case, it created a reasonable doubt as to the defend-
ant's guilt. In the case of Mitchell v. State 43 Fla. 584,
30 South. Rep. 803, it was held that proof of good charac-
ter did not, as matter of law, raise a reasonable doubt of
guilt, but such testimony was to be considered by the jury
like other testimony in the case. In Langford v. State,
33 Fla. 233, 14 South. Rep. 815, the court instructed the
jury on the subject of good character substantially the
same as in the Bacon case, and the defendant requested
an instruction containing in part an incorrect principle

as a guide for the jury in arriving at a verdict, and this court held that the charge requested was correctly refused, not only because of the incorrect principle announced, but because it was not a charge upon the law of the case. In commenting upon cases cited in support of this conclusion it was said they announced the view that instructions telling the jury that they might look to this fact, or may consider that fact, or are authorized to infer certain formulated conclusions from the evidence, and especially from certain specified parts of it, had often been condemned and should never be given, although either the giving or the refusal of such instructions may not be reversable error. The effect of the decision in the Langford case appears to be that the court is not required to single out specially the part of the evidence relating to character and instruct on it, though according to our past rulings the court may do so if it sees proper. The proper way, however, is to instruct the jury that the evidence of good character must be considered in connection with all the other evidence in the case, and when considered as a whole, if the evidence raises a reasonable doubt as to guilt they should acquit. The instruction requested by defendant informed the jury that they might consider the evidence of good character in connection with all the other evidence in the case, but it is distinctly stated therein that if the evidence in regard to character raised a reasonable doubt as to guilt the defendant should be acquitted. This was incorrect. Scott v. State 133 Ala. 112, 32 South. Rep. 623. Under the ruling in the Langford case we hold further that it is not error for the court to refuse to single out the subject of good character and instruct on it as distinguished from the other evidence in the case. See Watkins v. State 133 Ala. 88, 32

South. Rep. 627. The defect pointed out in the refused request in reference to the evidence of character alone raising a reasonable doubt exists in the instruction given by the court, except that the jury were told if the evidence of good character raised a reasonable doubt of guilt the defendant would be entitled to the benefit of it. There is nothing in this charge that can be said to be prejudicial to the accused. The court told the jury that there was evidence of good character in the case and it is not contended that there is any error in this respect. The accused could not be injured by the charge given as it tended to his benefit.

The defendant excepted to the following portion of the charge of the court to the jury: "The fact that the defendant may have been at the time of the killing under the influence of anger or resentment would not of itself be sufficient to preclude the idea of premeditation, unless the degree of feeling was such as to cloud his senses or to impair his reason, and not even then would it be sufficient if subsequently to forming the design and before executing it, sufficient time elapsed for an ordinarily reasonable man to have regained his self-possession, nor would such anger be sufficient to exclude the idea of premeditation if there was not such provocation for it as would be calculated to excite such anger or passion as might obscure the reason of an ordinarily reasonable man in the same situation and under the same circumstances, and mere words, no matter how insulting or abusive, would not be sufficient provocation, unconnected with any acts or other circumstances, calculated to excite anger or passion of a reasonable man." Preceding and in the immediate connection with this excepted portion the court in effect instructed the jury that before the defendant could

be found guilty of murder in the first degree it must be shown that he unlawfully killed the deceased in the manner charged in the indictment with a premeditated design to effect his death, but it was not essential in order that the design be premeditated that it should exist for any great length of time and be pondered over and thought upon; it may exist for only a few moments and still be premeditated, if the person forming and entertaining it is at the time cool, self-possessed and fully conscious of what he is doing, and of the consequences of his act.

Our statute defines homicides: "The killing of a human being is either justifiable or excusable homicide, or murder or manslaughter, according to the facts and circumstances of each case." Sec. 2377 Rev. Stats. Justifiable or excusable homicide is defined, and then murder in three degrees as follows: "2380. MURDER.—The unlawful killing of a human being, when perpetrated from a pre-meditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder in the first degree, and shall be punishable with death. When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual it shall be murder in the second degree, and shall be punished by imprisonment in the state prison for life. When perpetrated without any design to effect death, by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary, it shall be murder in the third degree, and shall be punished by imprisonment in the State prison not exceeding twenty years." Manslaughter is "the killing of a human

being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder according to the provisions of this article." Sec. 2384 Rev. Stats. "Premeditation" has been defined as meaning intent before the act, but not necessarily existing any intended time before the act. "Premeditated design" employed in the statute means an intent to kill, design means intent, and both words imply premeditation. Ernest v. State, 20 Fla. 383. The intent to kill must be formed before the act, but what length of time the law does not prescribe. It is sufficient if there is a fully formed purpose to kill with enough time for thought to satisfy the jury that the mind of the accused had become fully conscious of its own design. Carter v. State, 22, Fla. 553.

It seems from the instruction given on the subject of premeditation that the court has employed terms descriptive of the difference between common law murder in killing with malice aforethought, and manslaughter. It has been said by this court that the offense of murder as it existed at the common law no longer existed in this State, but in lieu thereof we have the statutory crime of premeditated killing. While this may be true, and while it is true that the statute must never be lost sight of in defining homicides, yet there is no set formula required in directing the jury as to the offenses thereby created. In the present case the testimony shows without contradiction that the accused shot and killed the deceased with a pistol, and the questions arising are whether it was done with a premeditated design, or in self-defense, or under circumstances reducing the offense below murder in the first degree. Voluntary manslaughter at common law was an intentional killing in the heat or sudden passion caused by suffi-

cient provocation. In deference to the infirmity of human nature the law proceeded, in reference to this offense, upon the theory that a man might be provoked to such an extent that in a sudden heat of passion he might take life before he had time to control himself, and that in such a case he should not be punished the same as if he had committed a deliberate homicide. The distinguishing feature at the common law between murder and manslaughter was that in the one case malice exists, and in the other it is absent. As expressed in one case "the state of mind must be such that the suddenly excited passion suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previous formed design, though of short duration; but it is not essential that the transport of passion shall be so overpowering as to destroy volition, or the reasoning faculty. A killing in sudden passion, excited by sufficient provocation, without malice, is manslaughter, not because the law supposes that this passion made him (the slayer) unconscious of what he was about to do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent, but as one in whom the exercise of judgment is impeded by the violence of excitement, and accountable therefor as an infirm human being." Smith v. State, 83 Ala. 26, 3 South. Rep. 551. As said in another case "the reason should, at the time of the act, be disturbed or obscured by passion to an extent which might render ordinary men of fair average disposition liable to act rashly or without due deliberation or reflection, and from passion rather than judgment." Maher v.

People, 10 Mich. 212. This court said in Holland v. State, 12 Fla. 117, text 128, that manslaughter is "homicide mitigated out of tenderness to the frailty of human nature, and that the law making allowance for man's infirmity, supposes that when assailed with violence or great rudeness, he is inspired with sudden impulse of anger, and, if before reasonable time is given for cool reflection and for his passion to subside, he slays his assailant, it is regarded as done through heat of blood and violence of anger, and not through malice * * * To entitle the accused to the benefit of this humane interpretation of the law, the provocation upon which he acts must be reasonable and sufficient, and such as would ordinarily and naturally excite a reasonable man to violent anger, and cause him to lose control of his passion." See also, People v. Calton, 5 Utah, 451, 16 Pac. Rep. 902; State v. Davis, 50 S. C. 405, 27 S. E. Rep. 905; Young v. State, 11 Humph. 200; Reg. v. Welsh, 11 Cox Cr. Cas. 336; Small v. Commonwealth, 91 Pa. St. 304. An intentional killing, therefore, may not be murder when done in the heat of passion or anger and following a sufficient provocation so close in time as to raise the presumption that it was the result of sudden impulse and without premeditation ,or when committed under such circumstances as to show that the mind was not fully conscious of its own intention. The only serious objection to the portion of the charge excepted to is in reference to the extent of the anger or resentment in order to preclude the idea of premeditation. The court instructed the jury that the fact that the accused was at the time of the killing under the influence of anger or resentment would not of itself preclude premeditation unless the degree of feeling was sufficient to cloud the senses, or to impair the reason. The passion need not be such as to

impair reason, but the jury were informed that if it was such as to cloud the senses it would be sufficient, provided sufficient cooling time did not exist and the provocation was such as was calculated to excite such anger or passion as might obscure the reason of an ordinarily reasonable man in the same situation and under the same circumstances. It would not be putting it too strong to say that the heat of passion, in order to preclude premeditation, must be such as to cloud the senses or obscure the reason, and this idea is held out in the charge. The first part of the charge states that premeditation might exist if the person forming and entertaining it was at the time cool, self-possessed and fully conscious of what he was doing and of the consequences of his acts. Premeditation may exist if the slayer is fully conscious of his intention to kill, but it is not necessary that he should be cool and self-possessed. This qualification of the charge is, however, favorable to the accused and he has no ground of complaint in this respect. There is another statement in the charge that is subject to criticism. It is stated that the degree of feeling would not be sufficient, if subsequently to forming the design and before executing it sufficient time had elapsed for an ordinarily reasonable man to have regained his self-possession. What design is meant? If it be the premeditated design to kill referred to in the first part of the charge, then time to regain self-possession would play no part. A killing from a premeditated design, that is, with the formed intention to kill with full consciousness of the mind's purpose, would be murder in the first degree without reference to time to regain self-possession, for the reason that the party would already be sufficiently self-possessed to form the intention to kill. If the jury took this view of the charge it could

not have been detrimental to the accused because it gave him the benefit of the additional fact to be found against him entirely immaterial, that sufficient time had to elapse after forming the premeditated design for an ordinarily reasonable man to have regained self-possession. If the design mentioned has reference to a purpose to kill under the impulse of anger or passion produced by a sufficient provocation, then the rule as stated as to cooling time would apply. In our opinion the charge considered together contains no reversable error.

Another assignment of error is that the court improperly instructed the jury that "unless such belief of danger is reasonable, that is, unless a reasonably cautious and prudent man would entertain the same belief from the same appearances, it would be no defense, even though it was an honest belief of danger." This is a portion of the charge on the right of self-defense, or justifiable homicide, and we discover no error in it. Lane v. State, decided at last term of this court. Again the defendant assigns as error the giving of the following portion of the charge, viz: "You cannot consider the testimony of the witnesses Lizzie Collier, Ann Cobb or Genie Horn as to statements made by the witness Alina Brinson for the purpose of determining the manner and cause of Horn's death, or what the acts of either the deceased or the defendant were on that occasion, except so far as the testimony and credibility of Alina Brinson may bear upon these questions. The only purpose for which you can consider the testimony of Lizzie Collier, Ann Cobb and Genie Horn to statements made by Alina Brinson is for the purpose of determining the truth or falsity of the testimony of Alina Brinson as to whether it is worthy of belief." The charge also contains a similar instruction in reference to the testimo-

ny of Jake Horn as to statements made to him by the
State witness, Dan Hargrove, which was inclined in the
exception 'taken. Both are governed by the same princi-
ple. The deceased was named Sam Horn, and Alina Brin-
son, examined as a witness on behalf of the State, testi-
fied to acts and declarations of the accused and the de-
ceased at the time of the killing. The witnesses Lizzie Col-
lier, Ann Cobb and Genie Horn were introduced for the
defense and testified that Alina Brinson made to them af-
ter the killing statements in conflict with her testimony
for the State. According to the testimony of these wit-
nesses the occurrences at the time of the killing as given
by Alina Brinson to them was different from those tes-
tified to by her when on the witness stand. No objection
was made to any of the testimony of the impeaching wit-
nesses, and conceding the propriety of its being considered
by the jury (Myers v. State, 43 Fla. 500, 31 South. Rep.
275; Carter v. State, 133 Ala. 160, 32 South. Rep. 231, we
think there was no error in the direction given the jury as
to the purposes of its introduction. It could not be con-
sidered as original evidence either for or against the ac-
cused further than to affect the credibility of the State
witness, Brinson, and the instruction clearly pointed this
out to the jury. Adams v. State, 34 Fla. 185, 15 South.
Rep. 905.

The only other assignment of error insisted on and not
considered is that the court erred in overruling the motion
for a new trial on the ground that the evidence was not
sufficient to sustain the verdict. We think that the testi-
mony introduced by the State was sufficient to sustain
the verdict, and the question of conflict was for the jury.

The judgment must be affirmed, and it is so ordered.