24483

The STATE, Respondent v. Reginald BYRD, Appellant.

(474 S.E. (2d) 430)

Supreme Court

*Wanda H. Haile, Senior Assistant Appellate Defender, South Carolina Office of Appellate Defense,* Columbia, *for Appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr., Assistant Attorney General William Edgar Salter, III,* Columbia; and *Solicitor Holman C. Gossett,* Spartanburg, *for Respondent.*

Heard Jan. 9, 1996.

Decided Aug. 19, 1996.

TOAL, Justice:

Reginald Byrd appeals his murder conviction, arguing that the trial court erred by failing to charge the jury on the law of voluntary manslaughter. We affirm.

## FACTUAL/ PROCEDURAL BACKGROUND

Beverly Golden ("Victim") was found dead in her automobile, which was discovered in an isolated, wooded area in Spartanburg County. She had been shot four times with a pistol. A flashlight and a beer can were in her lap. An unopened beer can was also in the vehicle. No weapons were found in or around her car.

Reginald Byrd was arrested in connection with the murder. He had been having an affair with Victim for approximately two years, and the two had had a child together. After his arrest, Byrd gave inconsistent statements to the police, completely denying involvement at one time, admitting to the killing at another, and on a third occasion, declaring that someone else had cómmitted the murder. At one point, he directed the police to the location in his house where they could find the murder weapon. The weapon was recovered.

Byrd was tried, found guilty of murder, and sentenced to life imprisonment. He appeals, asserting that the trial court erred by failing to charge the jury on the law of voluntary manslaughter. We disagree and affirm.

## LAW/ ANALYSIS

In determining whether the evidence required a charge of voluntary manslaughter, we view the facts in a light most favorable to the defendant. *State v. Gadsden,* 314 S.C. 229, 442 S.E. (2d) 594 (1994). According to Byrd's testimony, during his two-year affair with Victim, on a few occasions after their sexual liaisons, she had threatened him with a gun (and with a knife of one occasion), demanding that he not leave her or "mess around." Byrd testified to an incident occurring in his employer's parking lot where Victim had attacked him with a knife. On another occasion, Victim had gone to Byrd's house at 4:00 a.m., blowing her car horn and demanding that Byrd come out of his home.

On the night of Victim's murder, Byrd went to a convenience store to meet a friend. The friend did not appear at the store, but according to Byrd, Victim happened to be there. She pointed something out of her car window, which he thought was a gun. She told him to drive his car to a certain destination, a "meeting place," and that she would follow in her car, indicating the directions to him with the use of her turn signals. The destination was fourteen miles from the convenience store. When they arrived there, Victim flashed her car lights, and Byrd stopped his car. After both cars came to a stop, Byrd got out of his car, went to hers, and asked her what she was trying to prove. She replied that they were going to have sex. Byrd declined, saying he was trying to get his life straight. Victim became upset and said, "[O]h, it's over. . . . I'm

fixing to end this right now."

Byrd thought he saw Victim with a gun. He panicked, ran back to his car, opened the glove compartment, and pulled out a gun. He went to the front of Victim's car and shot at her two times through the front windshield. Byrd then ran to the side of her car and fired two more times at Victim, after which he left the scene. These circumstances, he now argues, entitled him to a charge of voluntary manslaughter at trial.

Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Kornahrens*, 290 S.C. 281, 350 S.E. (2d) 180 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed. (2d) 781 (1987). Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. Both heat of passion and sufficient legal provocation must be present at the time of the killing. *State v. Tyson*, 283 S.C. 375, 323 S.E. (2d) 770 (1984), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1873, 85 L. Ed. (2d) 165 (1985).

Where death is caused by the use of a deadly weapon, words alone, however opprobrious, are not sufficient to constitute a legal provocation. *State v. Gardner*, 219 S.C. 97, 64 S.E. (2d) 130 (1951). Words accompanied by hostile acts may, according to the circumstances, reduce a charge from murder to voluntary manslaughter. *State v. Mason*, 115 S.C. 214, 105 S.E. 286 (1920). "It may be concluded, therefore, that 'the sudden heat [of] passion, upon sufficient legal provocation,' which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an 'uncontrollable impulse to do violence.' " *State v. Davis*, 50 S.C. 405, 423-424, 27 S.E. 905, 911 (1897).

Byrd's acts do not satisfy the criteria of voluntary manslaughter. The present circumstances were not such as "would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an 'uncontrollable impulse to do violence.' " *Davis*, 50 S.C. at 424, 27 S.E. at 911. When Byrd and Victim arrived at the "meeting place," they both stopped their vehicles. It was Byrd who got

out of his vehicle and went toward Victim's. According to Byrd, after he refused Victim's demand for sex, she said, "[O]h, it's over. . . . I'm fixing to end this right now." These words are ambiguous; they do not constitute a clear signal of Victim's intent to immediately kill Byrd, especially in light of the accompanying evidence. A beer can was found in her lap. Victim never came out of her car. Additionally, there was no evidence that she actually pointed a gun at Byrd.

Byrd claims that he killed Victim out of fear for his life; however, the record does not support his argument.

His response to Victim's words, that she was "fixing to end" it, was to return to his vehicle. Instead of driving away, or simply remaining in the vehicle, Byrd retrieved a nine-millimeter pistol from his car's glove compartment and proceeded to the front of Victim's car to shoot at her. He shot at her two times through the front windshield and then moved to the side of her car, where he shot two more times. Byrd testified that at no time did he stop to call to Victim. These facts simply do not support the contention that the killing was in the sudden heat of passion upon sufficient legal provocation.

Where there is no evidence to support a jury instruction on voluntary manslaughter, a jury charge which effectively prohibits the jury from considering the lesser-included offense cannot be error. *Gadsden*, 314 S.C. 229, 442 S.E. (2d) 594. Because there is no evidence to support a jury instruction on voluntary manslaughter, the trial court was not in error in refusing Byrd's charge.

## CONCLUSION

Based on the foregoing, Byrd's conviction is AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.