19004

The STATE, Respondent, v. Wilson Cornelius ATKINSON, Appellant.
(172 S. E. (2d) 111)

*Messrs. John B. Thomas* and *D. Kerry Crenshaw,* of Charleston, *for Appellant,*

*Messrs. Robert B. Wallace, Solicitor,* and *A. Arthur Rosenblum, Assistant Solicitor,* of Charleston, *for Respondent,*

January 13, 1970.

BRAILSFORD, Justice:

The defendant, Wilson Cornelius Atkinson, appeals from his conviction of murder and sentence to death by electrocution. The victim was a police officer of the County of Charleston. The homicide occurred when the defendant, without warning, fired several pistol rounds into the back of the officer's head from the rear seat of a patrol car. Inferentially, his motive was to avoid an investigation which might have resulted in his arrest for car theft.

During the deliberations of the jurors, they returned to the courtroom, and the following inquiry was made by the

foreman: "The jury would like to know, in the event of a life sentence, if the defendant becomes eligible for parole or pardon at anytime?" The court replied:

"All right, sir. Now, as a matter of fact that's no concern of yours nor of mine. We have a Parole Board and when a man does become eligible for parole the Parole Board decides whether or not the particular prisoner will be released. The Parole Board is composed of very outstanding, a number of very outstanding citizens from all parts of the State and it is their concern as to whether or not a person would be paroled. That should not—the fact of whether or not he would be paroled or not paroled is not a matter for you to take into consideration. That's about the only way I can answer your question."

Within a short time thereafter, the jury returned its verdict of guilty without recommendation to mercy.

The defendant's first exception complains that the court erred in thus "charging the jury on pardon and parole in response to a question from the jury." The brief urges that the sequence of events culminating in the verdict demonstrates that the jury refused to recommend mercy because of its apprehension that the defendant, if sentenced to life imprisonment, might at some future time be released on parole; and that the court, "in commenting in any manner at all" on the parole system, "gravely prejudiced the defendant."

The prevailing view in this country, with which we agree, is that a jury charged with the responsibility of assessing the penalty to be suffered by an accused should not be invited, by instruction or argument, to speculate on the possible effect of pardon or parole upon the execution of the sentence imposed. Annots., 35 A. L. R. (2d) 769 (1954) and 12 A. L. R. (3d) 832 (1967). "(T)he possibility of parole is not a proper matter for the jury's consideration in (this) situation." *People v. Morse,* 60 Cal. (2d) 631, 645, 36 Cal. Rptr. 201, 388 P. (2d)

33, 41, 12 A. L. R. (3d) 810, 821 (1964). The rationale of this view was well exprseed in *State v. White,* 27 N. J. 158, 142 A. (2d) 65 (1958), as follows:

"The Legislature committed to the jury the responsibility to determine in the first instance whether punishment should be life or death. It charged another agency with the responsibility of deciding how a life sentence shall be executed. The jurors perform their task completely when they decide the matter assigned to them upon the evidence before them. What happens thereafter is no concern of theirs. It is no more proper for a jury to conclude that death be the penalty because a life sentence may be commuted or the defendant paroled, then (sic) it would be for a trial judge in other criminal causes deliberately to impose an excessive sentence to frustrate the statutory scheme committing parole to another agency." *Supra* at 177-78, 142 A. (2d) at 76.

The instructions complained of were consistent with this view of the law. The jurors were told that the subject of their inquiry was of no concern to them, and that they should not consider whether the defendant would or would not be paroled. The brief reference to the parole board tended to clarify the point, rather than to obscure it. Perhaps greater specificity as to the jury's duty in this respect would have been desirable. (See suggested instruction in *State v. Conner,* 241 N. C. 468, 471-472, 85 S. E. (2d) 584, 587 (1955).) However, in this law case, we lack jurisdiction to reverse the conviction and sentence except for error of law to the defendant's prejudice. S. C. Const., Art. V, sec. 4. We find no such error in the court's response to the jury's inquiry.

The second exception charges that the court erred "in allowing the jurors on *voir dire* to be asked questions concerning their views on capital punishment."

Of the jurors examined, six stated that they were opposed to capital punishment. After further interrogation by the court, three of these were held to be qualified. Two were

accepted as jurors, and one was peremptorily challenged by the State. Three of the six stated, in effect, that their opposition to capital punishment was such that, regardless of the evidence, they could not assent to a verdict which would result in this penalty. These three were excused by the court. If the defendant was prejudiced by the *voir dire* examination of the jurors, it was because of the ruling of the court that these three jurors were disqualified.

We find no error. In this jurisdiction unequivocal opposition to capital punishment has long been ground for disqualification of jurors in appropriate cases. *State v. James,* 34 S. C. 49, 12 S. E. 657 (1891); *State v. Hyde,* 90 S. C. 296, 73 S. E. 180 (1912); *State v. Robinson,* 149 S. C. 439, 147 S. E. 441 (1929). These cases must now be applied in the light of the recent decision of the Supreme Court of the United States in *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776, which proscribes the disqualification of a juror merely because he expresses opposition to capital punishment. The Witherspoon rule was followed by the trial judge in determining the qualifications of jurors. Only those members of the panel were excused who stated that their opposition to capital punishment could not be changed by evidence.

The third exception charges that the court erred in refusing defendant's motion for a change of venue which was based upon the ground that pre-trial publicity concerning the case by the Charleston news media had prejudiced his right to a fair trial. It is, of course, well settled that a motion for change of venue is addressed to the sound discretion of the trial judge, and that his disposition of such motion will not be reversed on appeal in the absence of a clear showing of abuse of discretion. *State v. Cannon,* 248 S. C. 506, 151 S. E. (2d) 752 (1966). Suffice it to say that the record in this case falls far short of such a showing.

The final exception charges error in sentencing the defendant to death by electrocution, "in that such a sentence

constitutes cruel and unusual punishment in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to The Constitution of the United States."

Counsel for defendant make a strong argument against the infliction of capital punishment. However, they fail to convince us that the sentence imposed upon the defendant conflicts with the constitution of this State or with that of the United States. We recently held to the contrary as to a sentence to death by electrocution imposed upon a defendant convicted of rape. *State v. Gamble,* 249 S. C. 605, 155 S. E. (2d) 916 (1967). The statute which prescribes the penalty for murder lawfully expresses the public policy of the State. As stated in *Gamble,* "(t)he wisdom of this policy is a legislative question, not a judicial one." *Supra* at 607, 155 S. E. (2d) at 917.

Appointed counsel for the defendant have represented him with ability and zeal in the court below and here. In *favorem vitae,* we have searched the record with care for error which might have resulted in prejudice to the defendant and have found none. We are convinced that he has had a fair trial. Accordingly, the judgment is

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.