## 19332

THE STATE, Respondent, v. Clifford Jackson HICKS, Appellant

(185 S. E. (2d) 746)

*Mrs. Betty M. Sloan,* of Columbia, *for Appellant,* cites:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joel E. Gott-lieb, Asst. Atty. Gen.,* of Columbia, and *Mike S. Jolly, Sol.,* of Union, *for Respondent,* cite:

December 13, 1971.

LITTLEJOHN, Justice.

On Sunday, May 11, 1969, the home of Woodrow Boyd in York County was burglarized in the nighttime. He was robbed and shot with a pistol and died from the wound inflicted. Robert James Pitts, Albert Hinson, and Clifford Jackson Hicks were charged with the crimes.

Robert James Pitts was indicted, in three separate indictments, with the crimes of murder, armed robbery and burglary. The charges were consolidated for trial and he was convicted during the first week of a two week term of Court of General Sessions for York County in April 1970. That conviction was appealed and affirmed by this court in opinion filed July 27, 1971. *State v. Pitts*, S. C., 182 S. E. (2d) 738 (1971).

Albert Hinson was also charged with murder, armed robbery and burglary. Heretofore he entered a plea of guilty to armed robbery and was sentenced to serve 18 years. The other charges for murder and burglary remain for disposition.

Clifford Jackson Hicks, the defendant herein, was charged in three separate indictments with murder, with armed robbery and with burglary. He was tried during the second week of the April term of Court of General Sessions for York County for murder, and was convicted and sentenced to life imprisonment. He has appealed that conviction to this court and asks that the conviction be set aside, or in the alternative, that a new trial be granted.

When the case was tried, counsel for the defendant, Hicks, moved to dismiss the indictment, on the ground that the indictment was defective on its face, and moved for a

change of venue and for a continuance. All three motions were denied.

The indictment upon which the conviction appealed from was bottomed, was in the usual form of indictments for murder in this state. It charged, in essence, that Clifford Jackson Hicks, feloniously, wilfully and of his malice aforethought, made an assault upon Woodrow Boyd with a pistol and did shoot, hit, strike, bruise, penetrate and wound him, from which mortal wound Woodrow Boyd died.

It is the contention of the defendant that inasmuch as it has already been developed in the previous trial of Pitts that Pitts was the one who actually fired the bullet that killed Woodrow Boyd, this defendant could, at most, have been charged only with aiding and abetting. The indictment obviously is not defective on its face as argued by the defendant. It is in the usual form and nothing on the face of the indictment is irregular in any way. The jury apparently believed the testimony in this case to the effect that Pitts, Hinson and this defendant planned to rob Mr. Boyd. The shooting and subsequent death grew out of the felonious joint endeavor of the three to rob. All were charged as principals. The trigger finger of one under the circumstances became the trigger finger of all. The defendant was indicted, charged, tried and convicted as a principal. The evidence, some of which will be referred to hereinafter, supports the contention that he was a principal.

"The law is that when two or more persons aid, encourage, and abet each other in the commission of a crime, all being present, all are principals and equally guilty." *State v. Williams*, 189 S. C. 19, 199 S. E. 906 (1938).

As indicated above, Pitts was tried and convicted during the first week of the April 1970 term of court. When Hicks was called for trial during the second week, counsel moved for a change of venue on the ground that the publicity arising out of the Pitts trial made it impossible for him to receive a fair trial. The motion was overruled and such rul-

ing is alleged as a basis for this court to grant a new trial. During the argument before the trial judge, reference was made to news stories in the York Evening Herald, and in the Charlotte Observer. Only one news story from the Evening Herald has been presented to this court (and apparently to the lower court), and accordingly our ruling must be based on that news story appearing April 9, 1970. The trial judge concluded that the news story was not such as to prevent a fair trial or to require a change of venue.

"It is, of course, well settled that a motion for change of venue is addressed to the sound discretion of the trial judge, and that his disposition of such motion will not be reversed on appeal in the absence of a clear showing of abuse of discretion." *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111 (1970).

We have reviewed the news story in the light of counsel's argument and agree that the showing did not warrant a change of venue. The printed report was basically factual. In determining whether or not prejudice exists we have the benefit (the trial judge did not at the time of his ruling) of the evidence which was presented against Hicks. A review of the evidence actually presented, studied in connection with the newspaper story, conclusively shows that the trial judge's refusal to grant the change of venue was justified. It should be added that the jurors were placed on their *voir dire,* questioned relative to publicity given to this case, and those who tried the case qualified to the satisfaction of the trial judge. We find no error.

Defendant alleges error on the part of the trial judge in denying the motion for continuance on the ground that a material witness was hospitalized in Charlotte, North Carolina. Immediately prior to the trial the defendant moved for a continuance because his mother was hospitalized and would be unable to testify. The defendant interposed the defense of alibi. The date on which Mr. Boyd was shot was Mother's Day. Several members of the de-

fendant's family testified to the effect that the defendant was elsewhere during the time of the shooting or just prior thereto. The State stipulated what the testimony of the defendant's mother would be. It was, in essence, the same testimony that other members of the family gave and was merely cumulative. Argument that the court should apply the doctrine *in favorem vitae* is misplaced. See *State v. Anderson,* 253 S. C. 168, 169 S. E. (2d) 706 (1969). The granting of a continuance is a matter within the discretion of the trial judge. Abuse of that discretion has not been shown.

Albert Hinson, who was charged with the same offenses as Pitts and this defendant, testified for the State. On cross examination he stated that he was an agnostic. He further testified:

"The Court: . . . Mr. Hinson, state for the record what your personal belief is with respect to the existence or non-existence of a supreme being, normally called a God.

"A. I do not know whether there is or there isn't.

"The Court: Would that affect you in any way when you take an oath and are called upon to tell the truth?

"A. No, sir.

"The Court: Before you took the witness stand you took an oath to tell the truth, did you mean by that that you would tell the truth?

"A. Yes, sir."

.  .  .  .  .  .

"Q. [By Counsel] In other words, though, the oath did not mean anything to you as far as binding you before any supreme being?

"A. It could get me five years for perjury—if I was caught lying.

"Q. But the oath, itself, did not mean anything to you?

"A. Yes, Ma'm. I respect the idea of a God."

Counsel moved that his testimony be stricken because of his declaration that he was an agnostic, and now argues that the lower court erred in failing to grant the motion.

It is further contended that his testimony should have been ruled out because it is uncorroborated and because hope of a light sentence was held out to the witness in other cases. In *State v. Pitts, supra,* the question of this same witness' competency arose in a different way. Counsel asked the trial judge to charge the jury that they could disregard his sworn testimony because he was an admitted agnostic. We held that the competency of a witness to testify was a question for the trial judge. The case of *State v. Abercrombie,* 130 S. C. 358, 126 S. E. 142 (1925) is relied upon. Courts have not hesitated to ease the rule stated therein.

The more modern view is as follows:

"At common law, one who did not believe in the existence of a Supreme Being and consequently was under no apprehension of future punishment for his falsehood was incompetent to testify, but the constitutions or laws of most of the American states, if not all, have abolished religious tests as to the competency of witnesses, and *it is now generally held that religious belief is not a test of the competency of a witness.* A belief in the inspired character of the Bible is not essential." 97 C. J. S. Witnesses, § 62 (1957). (Emphasis added.)

The theory of the common law rule was that a belief in God would bind the witness' conscience. One is more likely to tell the truth if he believes that he will be punished hereafter for lying. Hinson stated that he respected the idea of a God. In addition, he was obviously aware of the perjury law and was conscious of the fact that he would be punished, if not hereafter, here, for lying. We cannot say that the judge's ruling permitting Hinson's testimony was erroneous.

If the evidence of Hinson be considered uncorroborated it does not affect its admissibility; it goes merely to the weight and believability. In *State v. Taylor,* 255 S. C. 147, 177 S. E. (2d) 550 (1970) we said:

" 'The first question raised is that a conviction cannot stand upon the uncorroborated testimony of an accomplice.

Such is not the law in South Carolina. The weight to be given the testimony of an accomplice is for the fact finding body and if his uncorroborated evidence satisfies the jury of the defendant's guilt beyond a reasonable doubt, a conviction is warranted. *State v. Green,* 48 S. C. 136, 26 S. E. 234; *State v. Sowell,* 85 S. C. 278, 67 S. E. 316; *State v. Whaley,* 113 S. C. 103, 101 S. E. 568; *State v. Johnson,* 156 S. C. 63, 152 S. E. 825; *State v. Fleming,* 228 S. C. 129, 89 S. E. (2d) 104.' "

The contention that this witness' testimony was affected by the hope of a light sentence is not supported by the record.

The defendant alleges that the trial court erred in denying the motion to suppress evidence of Mrs. Boyd concerning identification of the appellant in a lineup, and cites as authority *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. (2d) 1149 (1967), in which the court held the sixth amendment right to counsel to be applicable to a lineup identification. In the case before us the defendant requested the lineup. He testified to the effect that his attorney was present. It is not clear when, or if, in actuality defense counsel moved to suppress the evidence, but assuming that the evidence was properly objected to, we think the defendant has failed to show that the law of Wade is applicable. The witness to whom the lineup was submitted only testified at best that the defendant was about the same size of one of the masked men who participated in the robbery and killing which ensued. This witness did not identify the defendant. Due process has not been denied. We find no error.

Defendant submits that the lower court erred as a matter of law denying defendant's motion for a directed verdict and judgment of acquittal. It is further argued that the verdict is contrary to the weight of the evidence, and that as a matter of law there was reasonable doubt as to the defendant's guilt. In order to warrant the conclusion that the court should have directed a verdict,

defendant argues that the testimony of Hinson and of Mrs. Boyd, the victim's wife, should be given no consideration. It cannot be seriously argued that Hinson's testimony, if believed, does not make out the State's case. In *Pitts, supra,* we held that the evidence was sufficient to convict Pitts. Here, we find the evidence (similar to that in Pitts) sufficient to convict Hicks. In essence, Hinson testified that he, along with Pitts and Hicks, went from Charlotte to the Boyd home on May 11, 1969, to burglarize and rob. He swore that in the process of the robbery, when all three were present, Pitts shot Mr. Boyd. Having hereinabove ruled that the testimony of Hinson and of Mrs. Boyd was proper for consideration by the jury, we find no merit in the argument that a directed verdict should have been granted, or that the verdict is contrary to the weight of the evidence, or that as a matter of law there was reasonable doubt as to the defendant's guilt.

Defendant also challenges the correctness of the judge's charge to the jury. It is submitted that the court erred in first, charging the jury on aiding and abetting when the defendant was not so indicted; secondly, in charging that the defendant may be convicted for murder as acting in concert with others when no such charge appeared in the indictment; and thirdly, in charging the jury the law of felony-murder when the defendant was not so indicted.

The gravamen of the defendant's objection to the judge's charges is that such issues were not set forth in the indictment. It is argued that the indictment failed to sufficiently inform the accused of his alleged criminal conduct. We have held hereinabove that the indictment was not defective. A preliminary hearing is available under the statute to one who wishes to learn more about the theory of the State's case than is included in the indictment. We hold the judge's charges proper in a case wherein one is charged as a principal. See *State v. Ciesiellski,* 213 S. C. 513, 50 S. E. (2d) 194 (1948). The case of *State v. Phil-*

*lips,* 222 S. C. 338, 72 S. E. (2d) 910 (1952), relied upon by the defendant, is not applicable.

Lastly, defendant asserts that the lower court erred in excusing two jurors because of their opposition to capital punishment. In *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111 (1970), we recognized the rule set forth in *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776, which proscribed the disqualification of a juror merely because he expressed opposition to capital punishment. A review of the *voir dire* questions submitted to these two jurors and their answers discloses that their opposition to capital punishment was such as to prevent them from rendering a verdict of guilty regardless of the evidence. The judge excused them for cause since they acknowledge they could not render a verdict of guilty (without recommendation of mercy) even if the evidence warranted it. This being true, they were properly excused even in the light of Witherspoon.

We find all exceptions to be without merit, and the judgment of the lower court is.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.