24033

The STATE, Respondent v. Ray GADSDEN, Appellant.

(442 S.E. (2d) 594)

Supreme Court

*M. Anne Pearce, Asst. Appellate Defender,* Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Senior Asst. Atty. Gen.,* and *Alexandria Broughton Skinner, Asst. Atty. Gen.,* Columbia, and *David P. Schwacke, Sol. of Ninth Judicial Cir.,* N. Charleston, *for respondent.*

Heard Feb. 1, 1994.

Decided Mar. 21, 1994.

TOAL, Justice:

Ray Gadsden ("Gadsden") appeals his conviction for murder of his wife. We affirm.

## FACTS

The testimony is conflicting as to the actual events surrounding the death of Donise Gadsden. Gadsden and his wife, Donise, had been separated for two to three months prior to her death. Gadsden testified that he and his wife had reconciled but were not openly living together.

Jerry Robinson, a Gadsden family friend, testified that Gadsden's family spent the evening prior to Donise's death urging Gadsden not to kill Donise. Kimberly Simmons, who lived in the apartment next to Donise Gadsden, testified that she arrived home at approximately 1:00 a.m. on the morning

of October 27, 1991. She heard an argument and screams coming from Donise Gadsden's apartment. The pathologist estimated the death at approximately 1:30 a.m. on October 27, 1991. The pathologist also testified that there were fourteen stab wounds, three of which penetrated Donise's body cavity and exited the back.

Ray Gadsden tells a different story. Gadsden testified that Donise called him and asked him to spend the night on the evening of October 26, 1991. He arrived at her apartment sometime after 9:30 p.m. on October 26, 1991. They spent a quiet evening and went to sleep about 1:00 a.m. on October 27, 1991. She woke him early and asked him to leave the apartment. He got dressed and left.

Suspecting Donise ushered him out so that she could meet her paramour, Gadsden waited outside until a man arrived. He continued to wait outside for another fifteen to thirty minutes. He entered the apartment and found Donise and the man, partially clothed, sitting on the bed. Gadsden told the man to leave. An argument ensued between Gadsden and Donise. Gadsden went to the kitchen and got a knife. He began stabbing the couch. When Donise came in, Gadsden began stabbing her. He stabbed her twice and left the apartment. At the time he left the apartment, Donise was alive.

At about noon on October 27, 1991, Gadsden telephoned Rose McQueen and told her he had killed Donise. Rose summoned Donise's family and they went to the apartment. Unable to get into the apartment, they called the police. The police found the back door of the apartment unlocked. Officer Stokes of the Charleston City Police Department entered the apartment. Upstairs, Officer Stokes could see that the bathroom light was on, but the door was locked. Using his car key, he was able to unlock the bathroom door where he found the body of Donise Gadsden. Later that evening, Ray Gadsden flagged down a Mt. Pleasant police car and informed the officers that he had killed his wife.

Gadsden was indicted and tried for murder. Gadsden admitted stabbing his wife. He claimed, however, that his actions constituted voluntary manslaughter, not murder. The jury found Gadsden guilty of murder and he was sentenced to life in prison.

## LAW/ANALYSIS

Gadsden claims the trial judge erred in instructing the jury on the definition of malice and the definition of "legal provocation." Gadsden does not claim the trial judge incorrectly defined malice; rather, he claims that the trial judge's definition of malice excluded the possibility of the jury finding manslaughter rather than murder. Gadsden complains of the following charges:

### A. Malice

Malice is said to be expressed when there is manifested a violent, deliberate, intention, unlawfully to take away the life of another human being.

### B. Legal provocation

A legal provocation is some act which, either alone or in connection with words or circumstances, is calculated to throw one into a passion.

"A lesser included offense instruction is required by due process only when the evidence warrants such an instruction." *State v. Atkins,* 293 S.C. 294, 298, 360 S.E. (2d) 302, 305 (1987); *see also State v. Gilliam,* 296 S.C. 395, 373 S.E. (2d) 596 (1988). Stated otherwise, where there is no evidence to support a finding that the defendant was guilty of the lesser offense, there can be no error in the failure to charge the lesser offense. *Cf. State v. Franklin,* — S.C. —, 425 S.E. (2d) 758 (Ct. App. 1992); *State v. Hartley,* 307 S.C. 239, 414 S.E. (2d) 182 (Ct. App. 1992). Likewise, where there is no evidence to support a jury instruction on voluntary manslaughter, a jury charge which effectively prohibits the jury from considering the lesser-included offense cannot be error. *Cf. State v. Franklin,* — S.C. —, 425 S.E. (2d) 758 (Ct. App. 1992). A jury charge misdefining an element of voluntary manslaughter that had no effect on any other aspect of the trial, evidence, or burden of proof would be harmless error absent evidence requiring the charge. *Cf. State v. Ciesiellski,* 213 S.C. 513, 50 S.E. (2d) 194 (1948); *see also State v. Parker,* — S.C. —, 433 S.E. (2d) 831 (1993). In the instant case, we must review the evidence to determine whether there was any evidence from which the jury could have found Gadsden guilty of the lesser-included offense of voluntary manslaughter rather than murder.

In determining whether the evidence required a charge of voluntary manslaughter, we view the facts in a light most favorable to the defendant. According to Gadsden's testimony, he left the victim's apartment shortly after 6:30 a.m. on October 27, 1991. He did not leave the area. Rather, he laid in wait for his wife's suspected paramour. Eventually, a man arrived. Gadsden continued to wait outside of the apartment for fifteen to thirty minutes before entering the apartment unannounced. Gadsden found his wife and the man sitting on the bed partially clothed. The man left the apartment. Gadsden and his wife began to argue. She raised a hammer towards him. He took the hammer away from her.[1] He went downstairs and got a kitchen knife and began stabbing the couch. The victim threw Gadsden's clothes down the stairs. She came downstairs when she saw Gadsden stabbing the couch. When she threw her wedding rings, he became enraged and began stabbing her. These are the facts upon which Gadsden relies in claiming the lesser offense of manslaughter.

Murder may be reduced to manslaughter if the defendant can show that the act was committed "in the heat of passion upon sufficient legal provocation." *See State v. Gandy*, 283 S.C. 571, 324 S.E. (2d) 65 (1984). Adultery may, in some instances, serve as "sufficient legal provocation." *See e.g. State v. Herring*, 118 S.C. 386, 110 S.E. 668 (1921). Spousal adultery, however, is not a license to kill. *Denham v. State*, 218 Miss. 423, 67 So. (2d) 445 (1953). Where as here, the killer suspecting the spouse of adultery lays in wait or searches for "the guilty embrace," the crime of murder will not be reduced to voluntary manslaughter. *State v. Chiles*, 58 S.C. 47, 36 S.E. 496 (1900) (one who goes in search of another, believing him guilty of criminal intimacy with his wife, has no right to shoot him, though finding him holding his wife in his guilty embrace); *accord Warren v. State*, 34 Ala. App. 447, 41 So. (2d) 201 (1949) (not entitled to voluntary manslaughter charge where husband seeks out wife and paramour and kills paramour); *People v. Gingell*, 211 Cal. 532, 296 P. 70 (1931); *State v. Agnesi*, 104 A. 299 (N.J. Sup. Ct. 1918). Under these facts, Gadsden failed to put forth any facts which would reduce murder to manslaughter. We find that Gadsden's claim

---

[1]The record indicates that Gadsden was twice the size of Donise and that he had no trouble relieving her of the hammer.

of error in the trial judge's charges to the jury related to voluntary manslaughter are without merit as Gadsden was not entitled to a charge on voluntary manslaughter in the first instance.

Finally, Gadsden claims the trial judge erred in prohibiting him from cross-examining Shelton Stevens ("Stevens") on Stevens' prior conviction in magistrate's court for aiding and abetting prostitution.

In South Carolina, a witness may be impeached by questioning the witness concerning prior convictions for crimes of moral turpitude. *See State v. Chasteen*, 231 S.C. 141, 97 S.E. (2d) 517 (1957). This Court has never decided whether aiding and abetting prostitution is a crime of moral turpitude. We need not decide that issue here; as if there was error, the error was harmless beyond a reasonable doubt.

Stevens testified that he was a lifelong friend of the victim. He testified that he had never had sexual relations with her. He admitted that he intended to meet the victim on October 27, 1991; however, he did not see her that day. Gadsden testified that Stevens was the suspected paramour he found sitting on the bed with the victim. Gadsden's testimony as to Stevens' presence at the victim's apartment went solely to show "sufficient legal provocation." As we have already determined that even if all of the facts related by Gadsden were true, the facts do not establish voluntary manslaughter. On these facts, the truth or falsity of Stevens' testimony was irrelevant. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed. (2d) 674 (1986) (among factors to consider importance of witness' testimony and strength of prosecution case). Thus, even if Gadsden was improperly prohibited from cross-examining Stevens on his prior conviction, the error could not have contributed to the jury verdict. Therefore, if any error occurred, the error was harmless beyond a reasonable doubt.

Accordingly, appellant's conviction is AFFIRMED.

CHANDLER, Acting C.J., FINNEY and MOORE, JJ., and WALTER J. BRISTOW, JR., Acting Associate Justice, concur.