THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT 
 BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Tony Davis, Appellant.
 
 
 

Appeal From Richland County
 Thomas W. Cooper, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2005-UP-021
Heard December 8, 2004  Filed January 
 13, 2005

AFFIRMED

 
 
 
Acting Chief Attorney Joseph L. Savitz, III, Office of Appellate Defense, of 
 Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. 
 McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
Senior Assistant Attorney General Mark Rapoport, Office of the Attorney General; 
 and Solicitor Warren Blair Giese, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  Tony Davis appeals his armed 
 robbery conviction asserting the trial judge erred in (1) failing to charge 
 the jury on the lesser-included offense of common law robbery where the evidence 
 showed he only had a BB gun during the commission of the crime and (2) sentencing 
 him to life without the possibility of parole when the prior armed robbery relied 
 on for sentencing was not final as it was a guilty plea for which he had not 
 yet been sentenced.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
On June 29, 
 2000, Bi-Lo employee Robena Young became suspicious of a male customer who continuously 
 walked up and down the same aisle with a buggy, watching her and watching the 
 front office.  Robena then alerted employee Mary Baughman, and Mary then walked 
 to the scanner room to tell employee Jennifer McCollum.  As Mary stepped in 
 the scanner room and began to relay the information to Jennifer, the man came 
 behind Mary into the room, pretending to look behind the door to the scanner 
 room.  When Jennifer asked what the man wanted, he closed the door, pulled up 
 his jacket, and pulled out a gun.  The man pointed the gun at both women 
 and ordered them to the ground.  Robena realized there was a robbery in progress 
 and alerted supervisor Robert Taylor.  Taylor went to the scanner room and knocked 
 on the door.  Upon hearing the knock, the man instructed the two women to stand 
 and pretend as if nothing happened.  The man then opened the door and attempted 
 to pull Robert into the room.  Robert and the man struggled, but Robert began 
 to comply because the man put the gun in Roberts side.  Just as Robert stepped 
 in the scanner room, the bookkeeper, Penny, opened the door to the cash office.  
 In an attempt to get away from the man, Jennifer pushed Penny back into the 
 cash office, but the man followed Jennifer in there.  The man opened up the 
 cash drawer, grabbed a big handful of money, and fled from the store.  
A few months later, Investigator Vinson showed the witnesses a photographic 
 line-up that included Davis picture.  Mary indicated Davis could be the man 
 who robbed the store that day.  Jennifer and Robena both picked Davis picture 
 without hesitation.  Davis was thereafter arrested and indicted for armed robbery.  
 Following a jury trial, Davis was convicted as charged and the trial judge sentenced 
 him to life in prison without the possibility of parole.  This appeal followed.           
LAW/ANALYSIS
I.  Lesser Included Offense
Davis first contends the trial judge erred in refusing to charge the jury 
 on the law of common law robbery because the evidence showed he used a BB gun 
 in the robbery.  We disagree.
During the trial, the parties stipulated that States Exhibit No. 16, a BB 
 gun, was found in Davis possession in September 2000.  Jennifer McCollum testified 
 Exhibit No. 16 resembled the weapon used by the man who robbed the store.  Investigator 
 Vinson testified States Exhibit No. 16 was a Crossman BB gun made to look 
 like a government model 45.  At the close of the evidence, defense counsel 
 requested a charge on the lesser-included offense of strong armed robbery, asserting 
 whether or not the witnesses reasonably believed the BB gun was a deadly weapon 
 was a matter for the jury.  The trial judge determined the lesser-included offense 
 should not be presented to the jury under the facts of this case.  Thereafter, 
 the court instructed the jury on the law of armed robbery and submitted two 
 verdict forms:  guilty of armed robbery and not guilty. 
 [1]   
A trial court must determine the law to be charged based on the evidence presented 
 at trial.  State v. Crosby, 355 S.C. 47, 51, 584 S.E.2d 110, 112 (2003).  
 The presence of evidence to sustain a conviction for the crime of a lesser degree 
 determines whether such a charge should be submitted to the jury.  State 
 v. Atkins, 293 S.C. 294, 298, 360 S.E.2d 302, 305 (1987) overruled on 
 other grounds by State v. Torrence, 305 S.C. 45, 406 S.E.2d 315 (1991).  
 Due process requires a lesser-included offense be charged to the jury only when 
 there is evidence from which it could be inferred that the defendant committed 
 the lesser rather than the greater offense.  Id.; State v. Murphy, 
 322 S.C. 321, 325, 471 S.E.2d 739, 741 (Ct. App. 1996).  [W]here there is no 
 evidence to support a finding that the defendant was guilty of the lesser offense, 
 there can be no error in the failure to charge the lesser offense.  State 
 v. Gadsden, 314 S.C. 229, 232, 442 S.E.2d 594, 597 (1994).  Concomitantly, 
 where there is no evidence to support a jury instruction on a lesser-included 
 offense, a jury charge which effectively prohibits the jury from considering 
 the lesser-included offense cannot be error.  Id. 
Common law robbery is defined as the felonious or unlawful taking of money, 
 goods, or other personal property of any value from the person of another or 
 in his presence by violence or by putting such person in fear.  State v. 
 Drayton, 293 S.C. 417, 428, 361 S.E.2d 329, 335 (1987).  Armed robbery occurs 
 when one commits a robbery and either:  (1) he is armed with a deadly weapon 
 or (2) he alleges he is armed with a deadly weapon, either by action or words, 
 while using a representation of a deadly weapon or any object which a person 
 present during the commission of the robbery reasonably believes to be a deadly 
 weapon.  S.C. Code Ann. § 16-11-330(A) (2003);  State v. Muldrow, 348 
 S.C. 264, 267-68, 559 S.E.2d 847, 849 (2002).
The only evidence presented at trial indicates the perpetrator was 
 either armed with a deadly weapon [2] , or alleged he was armed with a deadly weapon 
 by action while using a representation of a deadly weapon or any object which 
 a person present during the commission of the robbery reasonably believed to 
 be a deadly weapon.  S.C. Code Ann. § 16-11-330 (2003).  Mary Baughman testified 
 the perpetrator of the crime pointed a large black pistol at her.  Robert 
 Taylor stated the gun used was a handgun, and that it was like a black gun 
 that an officer would carry.  He further testified that the gun looked real 
 to me.  Jennifer McCollum indicated the robber used a big, black handgun.  
 When defense counsel asked Jennifer whether she understood States Exhibit No. 
 16 was a BB gun she replied, No, Sir.  She testified she saw an object that 
 she believed to be an actual handgun, as opposed to a BB gun.  Thus, while the 
 question of whether a BB gun is a deadly weapon may be an issue for the jury, 
 the facts of this case show only that the robber alleged he was armed with a 
 deadly weapon by using a representation of a deadly weapon which the victims 
 reasonably believed to be a deadly weapon.  In other words, while there may 
 be a jury issue as to the first prong of § 16-11-330, there is no jury issue 
 as to the second prong.  There simply is no evidence that Davis was guilty of 
 the lesser-included offense of common law robbery.  
II. Sentencing
Davis also argues the trial judge erred in sentencing him 
 to life without parole based on a prior guilty plea to armed robbery Davis had 
 entered but for which he had not yet been sentenced.  He asserts the lack of 
 sentencing prevented the guilty plea from being a final conviction such that 
 the trial judge could not consider it as a prior offense for sentencing purposes.  
 We disagree.  
In the interpretation of statutes, our sole function is 
 to determine and, within constitutional limits, give effect to the intention 
 of the legislature, with reference to the meaning of the language used and the 
 subject matter and purpose of the statute.  State v. Ramsey, 311 S.C. 
 555, 561, 430 S.E.2d 511, 515 (1993).  In construing a statute, words must 
 be given their plain and ordinary meaning without resort to subtle or forced 
 construction to limit or expand the statutes operation.  Id.  A statute 
 is construed by determining its meaning from the language used and its subject 
 matter and purposes.  State v. Carrigan, 284 S.C. 610, 617, 328 S.E.2d 
 119, 123 (Ct. App. 1985).  If a statutes language is plain and unambiguous 
 and it conveys a clear and definite meaning, there is no need to employ rules 
 of statutory interpretation.  State v. Morgan, 352 S.C. 359, 366-67, 
 574 S.E.2d 203, 206-207 (Ct. App. 2002).  Further, when the terms of a statute 
 are clear, the court must apply those terms according to their literal meaning.  
 Id.  at 367, 574 S.E.2d at 207.  
Section 17-25-45 of the South Carolina Code requires upon a conviction 
 for a most serious offense as defined by this section, a person must be sentenced 
 to a term of imprisonment for life without the possibility of parole if that 
 person has one or more prior convictions for:  (1) a most serious offense.  
 S.C. Code Ann. § 17-25-45(A)(1) (2003).  It defines most serious offense as 
 including armed robbery.  S.C. Code Ann. § 17-25-45(C)(1) (Supp. 2003).  It 
 defines prior conviction as meaning the defendant has been convicted of a most 
 serious or serious offense, as may be applicable, on a separate occasion, prior 
 to the instant adjudication.  S.C. Code Ann. § 17-25-45(F) (2003).  Finally, 
 it explicitly defines conviction as any conviction, guilty plea, or 
 plea of nolo contendere.  S.C. Code Ann. § 17-25-45(C)(3) (2003) (emphasis 
 added).  The plain meaning of the statute clearly indicates the trial court 
 correctly considered Daviss guilty plea when making its sentencing determination.  

Further, the legislative intent is clear from the history of § 17-25-45.  Prior 
 to January 1, 1996, this code section provided, for the purpose of this section 
 only, a conviction is considered a second conviction only if the date of the 
 commission of the second crime occurred subsequent to the imposition of the 
 sentence for the first offense.  S.C. Code Ann. § 17-25-45(B) (Supp. 1995) 
 (emphasis added).  The statute was amended in 1995 to delete the provision regarding 
 the imposition of sentence, and added the provision defining conviction to 
 include a guilty plea.  S.C. Code Ann. § 17-25-45 (Supp. 1995).
Accordingly, both the plain meaning of the statute and the legislative 
 intent clearly show the trial judge properly considered Davis prior guilty 
 plea to armed robbery as a prior conviction of a most serious offense for purposes 
 of sentencing.
CONCLUSION
Because there was no 
 evidence to support a finding that Davis was guilty of the lesser offense of 
 common law robbery, we hold there was no error in the jury charge which effectively 
 prohibited the jury from considering the lesser-included offense.  We further 
 hold the trial court properly considered Davis prior guilty plea to armed robbery 
 in sentencing Davis to life without parole pursuant to S.C. Code Ann. § 17-25-45.  
 Therefore, the order of the trial court is 
 AFFIRMED.
HUFF, KITTREDGE, 
 and BEATTY, JJ., concur.

 
 [1] While Davis couches his arguments in terms of the trial judges 
 failure to charge the jury on the lesser-included offense of common law robbery, 
 it should be noted the trial judge did in fact charge the law of common law 
 robbery in conjunction with charging the jury the law on armed robbery.  It 
 is clear, however, the trial judge refused to submit the charge of common 
 law robbery for the jurys consideration.  

 
 [2] See  State v. Heck, 304 S.C. 345, 404 S.E.2d 514 
 (Ct. App. 1991), cert. denied, 502 U.S. 1043, 112 S.Ct. 900, 
 116 L.Ed.2d 802 (1992) (wherein this court found a BB gun to be a weapon capable 
 of producing great bodily harm such that it qualified as a deadly weapon and 
 was properly submitted as a factual determination for the jury for purposes 
 of an armed robbery charge).